# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 15, 2011

No. 10-10236

Lyle W. Cayce
Clerk

NATIONAL FEDERATION OF THE BLIND OF TEXAS, INC., a Texas Nonprofit Corporation; INSTITUTE FOR DISABILITY ACCESS, INC., also known as Adapt of Texas, Inc.,

Plaintiffs - Appellees

v.

GREG ABBOTT, as he is Attorney General of the State of Texas,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before BARKSDALE, CLEMENT, and PRADO, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

The National Federation of the Blind of Texas, Inc., and the Institute for Disability Access, Inc., ("the Charities") brought a constitutional challenge to a Texas statute regulating the practices of for-profit entities engaged in charitable solicitation. The district court held certain portions of the statutory scheme unconstitutional as violative of the First and Fourteenth Amendments. In his capacity as the Attorney General of the State of Texas, Greg Abbott ("Texas") appeals certain portions of that decision. For the following reasons, we AFFIRM in part, REVERSE in part, and VACATE in part the district court's decision.

No. 10-10236

## I.     FACTS AND PROCEEDINGS

## A.     Texas Business and Commerce Code §§ 17.921–17.926

In response to a perceived problem of deceptive trade practices by for-profit entities engaged in charitable solicitation, in 2009 Texas enacted a statutory scheme ("the Act") entitled "[a]n Act relating to regulating the collection or solicitation of donated goods subsequently sold by for-profit entities or individuals." *See* TEX. BUS. & COM. CODE ANN. §§ 17.921–17.926. The Act requires "for-profit entities"[1] to make certain disclosures when collecting donated clothing or household goods through "public donations receptacles"[2] (§ 17.922), when making telephone or door-to-door solicitations (§ 17.923), and when making mail solicitations (§ 17.924).

The required disclosures are dependent on the relationship between the for-profit entity and the affiliated charitable organization. The "(b) provisions" govern instances where "none of the proceeds from the sale of the donated items will be given to a charitable organization," and the disclosure must state "DONATIONS ARE NOT FOR CHARITABLE ORGANIZATIONS AND WILL BE SOLD FOR PROFIT." *Id*. at §§ 17.922(b), 17.923(b), 17.924(b). The "(c) provisions" apply when "any of the proceeds from the sale of the donated items will be given to a charitable organization," and the disclosure must state "DONATIONS TO (NAME OF FOR-PROFIT ENTITY OR INDIVIDUAL) WILL BE SOLD FOR PROFIT AND ____ PERCENT (INSERT PERCENTAGE) OF ALL PROCEEDS WILL BE DONATED TO (NAME OF CHARITABLE

---

[1] "'For-profit entity' means an entity other than a nonprofit entity." TEX. BUS. ORGS. CODE § 1.002(26).

[2] "'Public donations receptacle' means a large container or bin in a parking lot or public place that is intended for use as a collection point for clothing or household goods donated by the public." TEX. BUS. & COM. CODE ANN. § 17.921(4).

2

No. 10-10236

ORGANIZATION)."[3]  *Id.* at §§ 17.922(c), 17.923(c), 17.924(c). Finally, the "(d) provisions" cover scenarios where "the for-profit entity or individual pays to a charitable organization a flat fee that is not contingent on the proceeds generated from the sale of the donated items and the for-profit entity or individual retains a percentage of the proceeds from the sale" and require the following disclosure: "SOLICITATIONS FOR DONATIONS ARE MADE BY (NAME OF FOR-PROFIT ENTITY OR INDIVIDUAL) ON BEHALF OF (NAME OF CHARITABLE ORGANIZATION). Donations will be sold for profit by (name of for-profit entity or individual) and a flat fee of (insert amount) is paid to (name of charitable organization)."[4] *Id.* at §§ 17.922(d), 17.923(d), 17.924(d). The (c) and (d) provisions each contain three components: (1) the "identification requirement," which requires the disclosure of contact information;[5] (2) the "sold for profit" disclosure requirement; and (3) the "fee arrangement" disclosure requirement. The Act provides for civil penalties for persons who violate its terms. *Id.* at § 17.926.

## B.    Procedural History and the Decision Below

The Charities are Texas nonprofit corporations that retain professional resellers to operate public receptacles intended for use as collection points for clothing and household goods donated by the public and to make solicitations of donations. The for-profit professional resellers pay a flat fee to the Charities based on the volume of donations collected. The Charities filed a complaint

---

[3] There are minor stylistic differences between the various (c) provisions. These non-substantive differences do not affect our analysis.

[4] There are also minor stylistic differences between the various (d) provisions. These non-substantive differences do not affect our analysis.

[5] Section 17.922 requires the disclosure of the name and "the business address, other than a post office box number, and telephone number of the for-profit entity or individual" while §§ 17.923 and 17.924 require the disclosure of the name of the for-profit entity only. The additional requirements mandated by § 17.922 do not affect our analysis and we will refer to these requirements collectively as the "identification requirement[s]."

3

No. 10-10236

alleging that the Act violates the First and Fourteenth Amendments of the United States Constitution because it (1) is a content-based restriction of protected speech; (2) violates equal protection; (3) is underinclusive; (4) is overly broad; and (5) is a prior restraint of protected speech. They also alleged that the Act violated Article I, Section 8 of the Texas Constitution. The Charities also sought emergency injunctive relief against the application of the Act. The parties filed a joint stipulation of facts and filed cross-motions for summary judgment.

The district court granted in part and denied in part the dispositive motions and entered final judgment. It found that the plaintiffs lacked standing to challenge the (b) provisions because they "have not hired nor do they intend to hire professional resellers who would pay them nothing." *Nat'l Fed'n of the Blind of Tex., Inc. v. Abbott*, 682 F. Supp. 2d 700, 707 (N.D. Tex. 2010). Because the Charities "do retain professional resellers who pay [them] a flat fee by volume," the district court found that the Charities had standing to challenge the (d) provisions. *Id.* Finally, the court found that the Charities "have not hired nor do they intend to hire professional resellers who would . . . pay them a percentage of the proceeds for the resell of the donated items." *Id.* But the court also found that it "cannot sever the flat fee provision from the percentage disclosure requirement, as it would create a large hole in the regulatory structure," *id.* at 708, and extended standing to the Charities to challenge the (c) provisions on that basis.

Turning to the disclosure requirements, the district court held that the identification requirement was constitutional. It held that the fee arrangement disclosure requirement was unconstitutional under the First Amendment because that requirement, although it "serves a compelling state interest, protecting charities and the public from fraud," is "not a narrowly tailored requirement." *Id.* at 711–13. The district court held that the sold-for-profit disclosure requirement survived constitutional scrutiny under the First

4

No. 10-10236

Amendment, but was unconstitutional under the Equal Protection Clause, reasoning that the sold-for-profit disclosure requirement unconstitutionally "discriminate[s] against charitable organizations who hire professional resellers to solicit and sell donations in favor of charitable organizations who conduct the solicitation and resale in-house." *Id.* at 714–15. The court determined that although the Act did not contain a severability clause, Texas law allowed it to sever the language it found unconstitutional from the statutory scheme. *Id.* at 707 ("The Texas Government Code explains that statutes without severability clauses are still severable if other portions of that statute are still able to be given effect.") (citing TEX. GOVT. CODE § 311.032(c)).

The district court granted in part and denied in part both Texas's and the Charities' motion for summary judgment. It also denied as moot the Charities' motions for emergency injunctive relief. That same day, in a separate order, the district court entered final judgment

> in favor of [the Charities] insofar as the Court finds the statute at issue unconstitutional with respect to the requirements that professional resellers disclose: (1) the fact that donated goods will be sold "for profit;" (2) the percentage of the proceeds that will go to a charitable organization, if applicable; and (3) the flat fee that will be paid to a charitable organization for the use of its name, if applicable. Judgment is entered in all other respects in favor of [Texas].

## C.    Texas's Appeal to this Court

The Charities did not appeal; their lack of standing to challenge the (b) provisions and the district court's holding that the identification requirements are constitutional are not at issue. Texas timely appealed, but only as to certain portions of the district court's decision. It does not appeal the district court's decision holding that the Charities have standing to challenge the (d) provisions. It also does not challenge the portion of the decision holding that the fee arrangement disclosure requirement is unconstitutional as applied to telephone

5

and door-to-door solicitations (§ 17.923) and to mail solicitations (§ 17.924). Texas appeals only the portions of the district court's order (1) extending standing to the Charities to challenge the (c) provisions; (2) holding that the fee arrangement disclosure requirement is unconstitutional under the First Amendment as applied to public donations receptacles; and (3) holding that the sold-for-profit disclosure requirement is unconstitutional under the Fourteenth Amendment as to telephone or door-to-door solicitations, mail solicitations, and public donations receptacles.

## II.     DISCUSSION

### A.     Standard of Review

"We review the district court's decision to grant a motion for summary judgment *de novo*." *Pub. Citizen, Inc. v. La. Atty. Disciplinary Bd.*, 632 F.3d 212, 217 (5th Cir. 2011). "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting FED. R. CIV. P. 56(a)).

The court reviews questions of jurisdiction, and specifically standing, *de novo. Arguello v. Conoco, Inc.*, 330 F.3d 355, 361 (5th Cir. 2003). We likewise review questions of constitutional law, including the constitutionality of a state statute, *de novo. Ortiz v. Quarterman*, 504 F.3d 492, 496 (5th Cir. 2007).

### B.     The Charities' Standing to Challenge the (c) Provisions

### 1.     *Article III Standing*

"[T]he requirement that a claimant have 'standing is an essential and unchanging part of the case-or-controversy requirement of Article III.'" *Davis v. FEC*, 554 U.S. 724, 733 (2008) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "To qualify for standing, a claimant must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling." *Id.* (citing *Lujan*, 504 U.S. at 560–61). To prove an injury in fact

No. 10-10236

sufficient "to raise a First Amendment facial challenge, however, a plaintiff must produce evidence of an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute." *Miss. State Democratic Party v. Barbour*, 529 F.3d 538, 545 (5th Cir. 2008) (alteration in original) (citations and internal quotation marks omitted). "Specifically, plaintiffs must demonstrate a 'serious [ ] interest [ ]' in acting contrary to a statute." *Id.* at 545 n.8 (alteration in original) (quoting *Int'l Soc'y for Krishna Consciousness v. Eaves*, 601 F.2d 809, 818 (5th Cir. 1979)) (citations omitted).

The Charities bear the burden to demonstrate standing for each claim they seek to press. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). It is undisputed that the Charities have standing to challenge the (d) provisions: the stipulated facts before the district court clearly demonstrate that they retain for-profit entities to solicit donations on a flat-fee basis, a "course of conduct arguably affected with a constitutional interest, but proscribed by statute." *Barbour*, 529 F.3d at 545. But the stipulated facts are silent as to whether the Charities retain for-profit entities to solicit donations on a percentage-based basis. To be certain, the Charities allege in their briefing before this court that "they are seriously interested in engaging in a course of conduct affected by" the (c) provisions. To establish standing, however, the Charities must demonstrate that their "alleged injury is actual or imminent rather than conjectural or hypothetical." *Id.*

The Charities have not met their burden because they have demonstrated no injury-in-fact with respect to the percentage provisions. As the district court correctly noted, the Charities "have not offered any evidence to show that they intend to hire professional resellers to engage in activity covered by" the (c) provisions. *Nat'l Fed'n of the Blind of Tex.*, 682 F. Supp. 2d at 706. We have previously held that "standing is not created by a declaration in court pleadings." *Barbour*, 529 F.3d at 545. The Charities' assertions before this court that they

7

are "seriously interested" in operating under the (c) provisions fail to satisfy "the irreducible constitutional minimum of standing." *Lujan*, 504 U.S. at 560.

We are cognizant that the flat-fee and the percentage provisions are seemingly identical in all material respects and that, should the former fall as unconstitutional, a subsequent challenge to the latter will almost certainly succeed. But the seemingly intertwined fates of the two provisions does not eviscerate Article III's requirements. "[S]tanding is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996). And although the Charities' conduct under the (d) provisions raises similar constitutional concerns to those it advances under the (c) provisions, "a plaintiff who has been subject to injurious conduct of one kind [does not] possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject." *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982).

## 2.    *Overbreadth*

The Charities alternatively argue that even if their activities are not directly affected by the (c) provisions, they should be afforded third-party standing to raise the rights of other charities not before the court. This argument misapprehends the nature of third-party standing, which is a prudential, not a constitutional, limitation on standing. When a party asserts a facial challenge to a statute under the First Amendment, courts may permit third-party standing when a plaintiff demonstrates that a provision that validly restricts its own speech is overbroad. *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 956–57 (1984). An statute is overbroad if it validly regulates some expressive conduct but also reaches substantial protected speech. *See City of Houston, Tex. v. Hill*, 482 U.S. 451, 456–57 (1987). The overbreadth doctrine permits a litigant to "challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from

constitutionally protected speech or expression." *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973). But the overbreadth doctrine applies on a *provision by provision* basis: "the plaintiff must establish injury under a particular provision of a regulation that is validly applied to its conduct, then 'assert a facial challenge, under the overbreadth doctrine, to vindicate the rights of others not before the court *under that provision.*'" *SEIU, Local 5 v. City of Hous.*, 595 F.3d 588, 598 (5th Cir. 2010) (quoting *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1271 (11th Cir. 2006)).

"Article III standing retains rigor even in an overbreadth claim." *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 754 (5th Cir. 2010). "[I]f [the Charities are] limited by one provision of an ordinance and make[] a facial challenge due to the overbreadth of a different provision, there is no constitutional standing, *i.e.*, there is no 'case or controversy,' as to the separate provision." *SEIU, Local 5*, 595 F.3d at 598. "Although various prudential standing principles have been relaxed in some First Amendment cases, this relaxation does not eliminate the distinct and independent requirement of Article III that the dispute between the parties must amount to a case or controversy." *Henderson v. Stalder*, 287 F.3d 374, 385 n.4 (5th Cir. 2002) (Jones, C.J., concurring). As set forth above, the Charities have not demonstrated any injury, actual or threatened, with respect to the (c) provisions. Accordingly, and despite the limits imposed on them by the (d) provisions, they lack Article III standing to challenge the (c) provisions of the statute. *See SEIU, Local 5*, 595 F.3d at 598.

### 3.    *Severability*

The Charities also argue that they should be extended standing to challenge the (c) provisions because those provisions are not severable from the (d) provisions. The district court agreed with this position, holding that "[b]ecause the effect of these two [types of solicitation] agreements are so similar

. . . this Court cannot sever the flat fee provision from the percentage disclosure requirement, as it would create a large hole in the regulatory structure." *Nat'l Fed'n of the Blind of Tex.*, 682 F. Supp. 2d at 708 (citing *Randall v. Sorrell*, 548 U.S. 230, 262 (2006)). This was error.

Whether unconstitutional provisions of a state statute are severable "is of course a matter of state law." *Virginia v. Hicks*, 539 U.S. 113, 121 (2003). In Texas, severability of statutes is governed by § 311.032 of the Texas Government Code. *See* TEX. GOV'T CODE ANN. § 311.032. Relevant here, § 311.032(c) provides:

> In a statute that does not contain a provision for severability or nonseverability, if any provision of the statute or its application to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the statute that can be given effect without the invalid provision or application, and to this end the provisions of the statute are severable.

*Id.* at 311.032(c); *Quick v. City of Austin*, 7 S.W.3d 109, 115 (Tex. 1999) ("[I]f any provision of the statute is held to be invalid, the invalidity does not affect other provisions that can properly be given effect in the absence of the invalid provisions."). Thus, the proper inquiry under Texas law focuses on whether, if one provision of a statute is invalid, the remaining provisions can still be given effect in the absence of the invalid provision. If so, the invalid provision will be severed. If not, the entire statute will be held invalid.

The district court properly analyzed the Charities' standing to challenge each provision, finding that the Charities had standing to challenge the (d) provisions, but that they did not have standing to challenge the (b) or (c) provisions. Then, before analyzing the constitutionality of the (d) provisions, the district court conducted a severability analysis. It held that the (d) provisions and the (c) provisions are not severable *from each other*, and on that basis held that the Charities had standing to challenge the (c) provisions. This was error in two ways.

No. 10-10236

First, the normal rule is that severability "comes into play only when a constitutional judgment on the merits has already proven unavoidable and has already been rendered." Adrian Vermeule, *Saving Constructions*, 85 GEO. L.J. 1945, 1957 (1997). "In unusual circumstances, courts may avert a constitutional or jurisdictional question by ordering the issues for decision to make severability itself a threshold question." *Id.* at 1957 n.71 (citing *INS v. Chadha*, 462 U.S. 919, 929, 931 n.7 (1983) (addressing severability of a federal statute first because a finding of nonseverability would have vitiated the challenger's standing)). It is a rare case where addressing severability prior to the constitutional adjudication of a provision of a statute is appropriate. This is not that case.

Second, in addition to being conducted out of order, the severability analysis conducted by the district court misapprehends Texas law. The critical inquiry is whether the (d) provisions or any portion of them are severable from the *statute as a whole*, not whether they are severable from the (c) provisions. *E.g.*, *Quick*, 7 S.W.3d at 115. We reemphasize, however, that a severability analysis should almost always be deferred until after the determination that the portion of a statute that a litigant has standing to challenge is unconstitutional. Consistent with this rule, we shall defer further discussion of the severability of the (d) provisions until first addressing their constitutionality. We will not address the constitutionality of the (b) or (c) provisions because the Charities lack standing to challenge them. Accordingly, we VACATE the portion of the district court's opinion addressing the (c) provisions.

## C.   The Constitutionality of Section 17.922(d)'s Fee Arrangement Disclosure Requirement Under the First Amendment

Section 17.922(d) of the Act requires for-profit solicitors who collect donations through public receptacles to make three disclosures: (1) the solicitor's contact information; (2) that donations will be sold for profit; and (3) the amount of the flat fee paid to the charity by the solicitor. The district court held that the

11

No. 10-10236

identification and the sold-for-profit disclosure requirements were constitutional under the First Amendment, but that the fee-arrangement disclosure requirement was facially unconstitutional.

## 1.   *Standard of Scrutiny*

We must first determine whether the public receptacle disclosures at issue are merely commercial speech, subjecting § 17.922(d) to the intermediate level of constitutional scrutiny set forth in *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557 (1980),[6] or whether the disclosures are "charitable solicitations," and thus subjecting the regulations to the stricter scrutiny announced in the Supreme Court's trilogy of cases relating to charitable solicitations—*Riley v. National Federation of the Blind of North Carolina, Inc.*, 487 U.S. 781 (1988); *Secretary of State of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947 (1984); and *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620 (1980). Texas argues that the district court erred by applying the stricter scrutiny of *Schaumburg* and its progeny, suggesting that "the receptacles at issue in this case represent nothing more than an upturned palm." We disagree.

The essence of Texas's argument is that, to the extent the receptacles "speak," their message amounts to little more than "a proposal of a commercial transaction: donate goods here." Accordingly, Texas relies heavily on the following language from *Schaumburg* for the proposition that this court should distinguish passive donations to public receptacles from more active solicitations by mail, telephone, or door-to-door visits:

---

[6] "(1) The First Amendment protects commercial speech only if that speech concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial governmental interest, (3) directly advances that interest, and (4) reaches no further than necessary to accomplish the given objective." *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507 (1981) (citing *Cent. Hudson*, 447 U.S. at 563–66).

12

No. 10-10236

> [C]haritable appeals for funds, on the street or door to door, involve a variety of speech interests—communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes—that are within the protection of the First Amendment. Soliciting financial support is undoubtedly subject to reasonable regulation but the latter must be undertaken with due regard for the reality that solicitation is characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues, and for the reality that without solicitation the flow of such information and advocacy would likely cease. Canvassers in such contexts are necessarily more than solicitors for money.

444 U.S. at 632.

But this is an unpersuasive distinction. *Schaumburg*'s mention of "on the street or door to door" solicitations is reflective of the statute at issue in that case, not a meaningful ground on which to distinguish donations to public receptacles. Black's law dictionary defines solicitation as "[t]he act or an instance of requesting or seeking to obtain something." BLACK'S LAW DICTIONARY 1520 (9th ed. 2009). Solicitation is not limited to in-person communication. More importantly the speech interests identified in *Schaumburg*—"communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes"—are surely implicated by the public receptacles. The mere inclusion of the name of a charity on a donation box communicates information about the beneficiary of the benevolence and explicitly advocates for the donation of clothing and household goods to that particular charity. At a minimum, the donation boxes implicitly advocate for that charity's views, ideas, goals, causes, and values. It is clear that Texans have choices when choosing to dispose of unwanted clothing or household goods. The Texas Association of Goodwills, as amicus supporting Texas before the district court, submitted a photograph of a parking lot with at least four separate donation receptacles, each presumably supporting a different charity.

13

No. 10-10236

A generous Texan who chooses to donate his goods is thus faced with a marketplace of charitable options; the public receptacles are not mere collection points for unwanted items, but are rather silent solicitors and advocates for particular charitable causes. Contrary to Texas's position, the public receptacles represent far more than an "upturned palm" or a mere "proposal of a commercial transaction [that says] donate goods here." Rather, the donation bins' "solicitation is characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues." *Schaumburg*, 444 U.S. at 632. Accordingly, we reject Texas's characterization of the speech related to the public receptacles as mere commercial speech.

## 2.    Riley / Munson / Schaumburg *Scrutiny*

Having determined that the public receptacle disclosures at issue are charitable solicitations, we evaluate the constitutionality of § 17.922(d) under the standard announced in *Riley*, *Munson*, and *Schaumburg*. The Act will therefore be sustained as constitutional under the Speech Clause if (1) it "serves a sufficiently strong, subordinating interest that the [government] is entitled to protect" and (2) it is "'narrowly drawn . . . to serve the interest without unnecessarily interfering with First Amendment freedoms.'" *Munson*, 467 U.S. at 960-61 (quoting *Schaumburg*, 444 U.S. at 636-37).

Our discussion, however, can be brief. The Charities did not challenge the district court's holding that the identification and the sold-for-profit disclosure requirements are constitutional under the First Amendment. Texas did not challenge the district court's holding that the fee arrangement disclosure requirement, as applied to telephonic, door-to-door, or mail solicitation are unconstitutional under the First Amendment. Indeed, the able Assistant Solicitor General correctly conceded at oral argument that the fee arrangement

disclosure "portions of this statute . . . cannot be squared with the Supreme Court's opinion in *Riley*." We agree.

In *Riley*, the Supreme Court held that the North Carolina statute at issue—which required fund-raisers to disclose the average percentage of money they had turned over to charities within the past year—was not narrowly tailored. *See Riley*, 487 U.S. at 798–801. The Court held that "[i]n contrast to the prophylactic, imprecise, and unduly burdensome rule the State has adopted to [further its interest], more benign and narrowly tailored options are available." *Id.* at 800. Specifically, the Court said that "the State may itself publish the detailed financial disclosure forms it requires professional fundraisers to file. This procedure would communicate the desired information to the public without burdening a speaker with unwanted speech during the course of a solicitation." *Id.* "Alternatively," the Court explained, "the State may vigorously enforce its antifraud laws to prohibit professional fundraisers from obtaining money on false pretenses or by making false statements." *Id.* In this case, there is nothing stopping Texas from requiring for-profit resellers to file financial disclosure forms, which Texas could publish without burdening the charities with unwanted speech on the receptacle notices. Texas could also ramp up its anti-fraud enforcement efforts. Both of these alternative means are available to Texas and both would be less of a burden on the Charities' speech rights than the Act's fee arrangement disclosure requirement. We have rejected Texas's characterization of the public receptacle disclosures as pure commercial speech and hold that § 17.922 regulates charitable solicitations and is to be evaluated under *Riley*, *Munson*, and *Schaumburg*. Same standard, same result. The fee arrangement disclosure requirement for public receptacles is unconstitutional under the First Amendment.

**D.     The Constitutionality of the Sold for Profit Disclosure Requirements in §§ 17.922(d), 17.923(d) and 17.924(d) Under the Equal Protection Clause of the Fourteenth Amendment**

No. 10-10236

"[A] violation of equal protection occurs only when the government treats someone differently than others similarly situated . . . ." *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988). The district court held that the sold-for-profit disclosure requirements violate the Equal Protection Clause of the Fourteenth Amendment because they are underinclusive, reasoning that:

> [T]he Act's disclosure requirements are unconstitutionally underinclusive because they discriminate against charitable organizations who hire professional resellers to solicit and sell donations in favor of charitable organizations who conduct the solicitation and resale in-house. Texas is constitutionally permitted to put its citizens on notice that the clothing and household goods donated are going to be resold instead of being reused or donated. But if Texas chooses to do so, it must require all organizations engaging in this resale activity to inform the public of this fact, not just some of these organizations.

*Nat'l Fed'n of the Blind of Tex.*, 682 F. Supp. 2d at 714–15.

This analysis misapprehends both the sold-for-profit disclosure requirement in the (d) provisions and the purposes it serves. The sold-for-profit disclosure requirement in the (d) provisions requires the posting of notices stating: ". . . Donations are sold for profit by (name of for-profit entity or individual) . . . ." §§ 17.922(d); 17.923(d), 17.924(d). The required disclosure does not inform the reader whether or not the goods are "going to be resold instead of being reused or donated." Instead, it notifies the donor that the goods being donated will be resold *by a third party*, the professional solicitors. "[R]equir[ing] professional fundraisers to disclose their professional status to potential donors [gives donors notice] that at least a portion of the [proceeds from the donations] contributed will be retained" by the professional solicitors. *Riley*, 487 U.S. at 799.

*All* donated goods are resold or otherwise disposed of for charitable purposes. A donor is not defrauded when a charity resells the goods she donates or expends capital to facilitate that process; the evil occurs when a portion of the proceeds from a donation is diverted to a third-party, professional solicitor

without the knowledge of the donor. The point is *not* that the donations will be resold, nor is it that a portion of the proceeds from the donations will be expended in that resale effort. "Donors are . . . undoubtedly aware that solicitations incur costs, to which part of their donation might apply." *Id.* The point of the disclosure requirement is to make donors aware of a *third-party's* presence to the transaction. Texas cannot constitutionally compel either the Charities or the solicitor to "speak" to the exact fee arrangement. *See supra.* But with knowledge of the third-party's presence, "a donor is free to inquire how much of the contribution will be turned over to the charity." *Riley*, 487 U.S. at 799.

The Act's purpose is not to put Texas "citizens on notice that the clothing and household goods donated are going to be resold instead of being reused or donated." *Nat'l Fed'n of the Blind of Tex.*, 682 F. Supp. 2d at 714–15. It is to alert Texans to the presence of a third party with a profit motive in the donation transaction. Charitable organizations that handle resale of goods in-house do not utilize professional solicitors, and therefore cannot be made to disclose a third-party arrangement that does not exist. Quite simply, charities that do not employ for-profit solicitors are not similarly situated to those that do. The Equal Protection Clause "does not require classes of people different in fact or opinion to be treated in law as though they were the same." *Cunningham v. Beavers*, 858 F.2d 269, 272 (5th Cir. 1988). The Act is not underinclusive; there is simply no equal protection violation present here. Accordingly, we REVERSE the district court's holding that the sold-for-profit disclosure requirements are unconstitutional under the Fourteenth Amendment.

**E.    Severability**

Having determined that the fee arrangement disclosure requirements contained in §§ 17.922(d), 17.923(d), and 17.924(d) are unconstitutional, we now

turn to whether the unconstitutional portions of the statute are severable under Texas law. We have little difficulty determining that they are.

The unconstitutional portion of the (d) provisions is the portion that reads: "and a flat fee of (insert amount) is paid to (name of charitable organization)." *Id*. Our inquiry under Texas law is "[i]f, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must stand." *Rose v. Doctors Hosp.*, 801 S.W.2d 841, 844 (Tex. 1990). The apparent legislative intent of the (d) provisions is obvious: to alert unsuspecting donors that the proceeds derived from their donations are diverted to third-party, for-profit entities. Although Texas cannot constitutionally compel the disclosure of the fee arrangement, when that "unconstitutional portion is stricken out," we hold that "that which remains"—SOLICITATIONS FOR DONATIONS ARE MADE BY (NAME OF FOR-PROFIT ENTITY OR INDIVIDUAL) ON BEHALF OF (NAME OF CHARITABLE ORGANIZATION). Donations will be sold for profit by (name of for-profit entity or individual)—"is complete in itself and capable of being executed in accordance with the apparent legislative intent." *Id*. Accordingly, we hold that the unconstitutional portion of the Act is severable and the remainder, including the (b) and (c) provisions in their entirety, must stand.

## III.  CONCLUSION

The Charities lack standing to challenge the (c) provisions; the portion of the district court's opinion addressing the constitutionality of the (c) provisions is VACATED. The portion of the district court's opinion holding that the part of § 17.922(d) that reads "and a flat fee of (insert amount) is paid to (name of charitable organization)" is unconstitutional is AFFIRMED. The sold-for-profit disclosure requirements scattered throughout the Act are constitutional, and the district court's contrary conclusion is REVERSED. This case is REMANDED

No. 10-10236

with instructions to dismiss any claim based on the (c) provisions for want of jurisdiction and for further proceedings, if any, consistent with this opinion.