# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 9, 2012

Lyle W. Cayce
Clerk

No. 11-50932

DEPARTMENT OF TEXAS, Veterans of Foreign Wars of the United States; AMVETS DEPARTMENT OF TEXAS, INCORPORATED; AMVETS POST 52, INCORPORATED; AMVETS POST 52, AUXILIARY, INCORPORATED; THE GREAT COUNCIL OF TEXAS, Improved Order of Redmen; REDMEN WAR EAGLE TRIBE NO. 17; REDMEN TRIBE NO. 21 GERONIMO; REDMEN RAMONA COUNCIL NO. 5; THE INSTITUTE FOR DISABILITY ACCESS, INCORPORATED, doing business as Adapt of Texas; TEMPLE ELKS LODGE NO. 138, Benevolent and Protective Order of Elks of The United States of America, Incorporated; BRYAN LODGE NO. 859, Benevolent and Protective Order of Elks of The United States of America, Incorporated; AUSTIN LODGE NO. 201, Benevolent and Protective Order of Elks of The United States of America, Incorporated; ANNA FIRE AND RESCUE, INCORPORATED,

Plaintiffs - Appellees

v.

TEXAS LOTTERY COMMISSION; GARY GRIEF, Executive Director in His Official Capacity; PHILLIP SANDERSON, Director of Charitable Bingo in His Official Capacity; MARY ANN WILLIAMSON, Commissioner in Her Official Capacity; DAVID J. SCHENCK, Commissioner in his Official Capacity; J, WINSTON KRAUSE, Commissioner in His Official Capacity,

Defendants - Appellants

Appeal from the United States District Court
for the Western District of Texas

Before STEWART, Chief Judge, DeMOSS and GRAVES, Circuit Judges.

DeMOSS, Circuit Judge:

No. 11-50932

The Texas Bingo Enabling Act allows qualifying charities to conduct bingo games in order to raise money for their charitable causes. The Act prohibits charities from using bingo proceeds for certain types of political advocacy, including lobbying and supporting or opposing ballot measures. Plaintiffs-appellees, a group of nonprofit organizations licensed to conduct bingo games, filed suit challenging those restrictions on First Amendment grounds. The district court granted summary judgment in favor of Appellees and issued a permanent injunction preventing enforcement of the challenged statutory provisions. Defendants-appellants, the commissioners and two executive officers of the Texas Lottery Commission, timely appealed. We reverse for the following reasons.

BACKGROUND

The Texas Constitution has prohibited gambling for most of the State's history. *See* Tex. Const. of 1845, art. VII, § 17 ("No lottery shall be authorized by this State; and the buying or selling of lottery tickets within this State is prohibited."); *see also* Tex. Const. art. III, § 47 (amended 1980) ("The legislature shall pass laws prohibiting the establishment of lotteries and gift enterprises in this State, as well as the sale of tickets in lotteries, gift enterprises or other evasions involving the lottery principle, established or existing in other States."); *Hardy v. State*, 102 S.W.3d 123, 130 (Tex. 2003). In November 1980, Texas voters approved an amendment to the Texas Constitution establishing an exception to the general ban on gambling for charitable bingo. The exception allows the Texas Legislature to "authorize and regulate bingo games conducted by a church, synagogue, religious society, volunteer fire department, nonprofit veterans organization, fraternal organization, or nonprofit organization supporting medical research or treatment programs." Tex. Const. art. III, § 47(b). The constitution requires that "all proceeds from the [bingo] games are spent in Texas for charitable purposes of the organizations." *Id.* § 47(b)(1).

2

No. 11-50932

Acting under the authority provided by the charitable bingo exception, the Texas Legislature passed the Bingo Enabling Act ("Bingo Act") in 1981. Bingo Enabling Act, 67th Leg., 1st C.S., ch. 11, 1981 Tex. Gen. Laws 85 (current version at TEX. OCC. CODE § 2001.001 et seq. (2012)). The Bingo Act allows qualifying nonprofit organizations to obtain a license to conduct bingo games and sets forth the rules and regulations that govern the State's charitable bingo program, which is administered by the Texas Lottery Commission. *See* TEX. OCC. CODE §§ 2001.002(8), 2001.051. These regulations include the Texas Constitution's requirement that all bingo proceeds be used for the "charitable purposes" of the organization. *See id.* § 2001.454.

This appeal centers on provisions in the Bingo Act that prohibit charities from using the money generated by conducting bingo games for lobbying activities or to support or oppose ballot measures ("political advocacy"). Specifically, the Act provides:

> A licensed authorized organization may not use the net proceeds from bingo directly or indirectly to:
>
> (1) support or oppose a candidate or slate of candidates for public office;
>
> (2) support or oppose a measure submitted to a vote of the people; or
>
> (3) influence or attempt to influence legislation.

*Id.* § 2001.456.

Appellees, thirteen nonprofit organizations licensed to hold bingo games ("Charities"), have challenged the second and third of the above provisions, § 2001.456(2)–(3), arguing they violate their First Amendment right to free speech. They do not challenge the prohibition on using bingo funds to support or oppose political candidates. The lead plaintiffs are the Department of Texas

3

No. 11-50932

Veterans of Foreign Wars ("VFW") and the Institute for Disability Access, d/b/a ADAPT of Texas ("ADAPT"). Both VFW and ADAPT engage in political advocacy in furtherance of their charitable mission. They maintain that bingo generates a substantial portion of their total revenue and that the challenged statutory provisions restrict their ability "to engage in political advocacy to the degree that, in the judgment of [their] governing bod[ies], would best further [their] purposes."

The Charities filed suit on June 25, 2010 in the Western District of Texas naming as defendants, in their official capacities, the commissioners and two executive officers of the Texas Lottery Commission (collectively the "Commission").[1] The Charities asserted claims under 42 U.S.C. § 1983 arguing that the challenged provisions are facially invalid under the First Amendment because they restrict political speech and fail to satisfy strict scrutiny. They also alleged that the provisions impermissibly restrict speech on the basis of the speaker's identity because they apply to nonprofit organizations and not for-profit gaming organizations. The Charities sought temporary and permanent injunctions preventing enforcement of the challenged provisions, a declaration that the provisions are unconstitutional, and attorneys' fees.

On October 29, 2010, the district court issued a preliminary injunction preventing enforcement of § 2001.456(2)–(3). The court, drawing heavily from the Supreme Court's opinion in *Citizens United v. Federal Election Commission*, 130 S. Ct. 876 (2010), concluded that the challenged provisions are facially unconstitutional under the First Amendment because they burden political speech and fail to satisfy strict scrutiny. Shortly after the district court issued its opinion, the Commission filed an interlocutory appeal in this court. The

---

[1] The Texas Lottery Commission was originally named as a defendant, but was dismissed from the suit by the district court on the basis of Eleventh Amendment immunity.

4

No. 11-50932

Commission also filed motions to stay the preliminary injunction in the district court and in this court, both of which were denied.

While the interlocutory appeal was pending, the Charities moved for summary judgment. On August 30, 2011, the district court issued an opinion granting the Charities' motion for summary judgment for the reasons stated in the opinion granting the preliminary injunction. That same day the district court entered a final judgment permanently enjoining enforcement of the challenged provisions and declaring them unconstitutional. The interlocutory appeal was dismissed as moot and the Commission timely filed a new appeal challenging the permanent injunction.

## STANDARD OF REVIEW

This court reviews the grant of summary judgment de novo, applying the same standard used by the district court. *Hill v. Carroll Cnty., Miss.*, 587 F.3d 230, 233 (5th Cir. 2009). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

## DISCUSSION

*A. Standing*

Before reaching the merits of this appeal, we must first address the Commission's argument that the Charities lack Article III standing because their claims are not redressable.

Constitutional standing is a jurisdictional question which we review de novo. *Nat'l Fed'n of the Blind of Tex., Inc. v. Abbott*, 647 F.3d 202, 208 (5th Cir. 2011). To establish Article III standing, a plaintiff must show "an injury-in-fact caused by a defendant's challenged conduct that is redressable by a court." *K.P. v. LeBlanc*, 627 F.3d 115, 122 (5th Cir. 2010). For a plaintiff's claim to be redressable, it must be "likely, as opposed to merely speculative, that a favorable decision will redress the plaintiff's injury." *S. Christian Leadership Conference*

5

No. 11-50932

*v. Supreme Court of the State of La.*, 252 F.3d 781, 788 (5th Cir. 2001). "[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his *every* injury." *LeBlanc*, 627 F.3d at 123 (alteration in original) (quoting *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982)).

The Commission argues that the Charities' claims are not redressable because the relief they seek—the ability to use bingo proceeds for political advocacy—is independently foreclosed by the requirement in the Texas Constitution and the Bingo Act that bingo proceeds be used only for an organization's charitable purpose. *See* Tex. Const. art. III, § 47(b)(1); TEX. OCC. CODE § 2001.454. According to the Commission, even if we affirm the lower court's injunction, the charitable purpose requirement, which the Charities have not challenged, would still prohibit the Charities from using bingo proceeds for lobbying or to support or oppose ballot measures. As support, the Commission argues: (1) that by enacting the speech provisions challenged by the Charities, the legislature made clear that an organization's charitable purpose cannot include political advocacy, and (2) that the Commission's interpretation of the charitable purpose requirement is reasonable and entitled to deference.

The Commission's argument requires that we interpret the charitable purpose requirement as prohibiting the use of bingo proceeds for both lobbying and supporting or opposing ballot measures. While the term "charitable purpose" is not defined in the Texas Constitution, it is defined in the Bingo Act. *See Owens v. State*, 19 S.W.3d 480, 484 (Tex. App.—Amarillo 2000, no pet.) ("The [Texas] Legislature may define terms which are not defined in the Constitution itself . . . ."). We interpret Texas statutes the way we believe the Texas Supreme Court would do so. *See United States v. Escalante*, 239 F.3d 678, 681 n.12 (5th Cir. 2001); *see also Lipscomb v. Columbus Mun. Separate Sch. Dist.*, 269 F.3d

6

No. 11-50932

494, 508 n.72 (5th Cir. 2001). The Bingo Act defines "charitable purpose" as follows:

> Except as otherwise provided by law, the net proceeds derived from bingo and any rental of premises are dedicated to the charitable purposes of the organization only if directed to a cause, deed, or activity that is consistent with the federal tax exemption the organization obtained under 26 U.S.C. Section 501 and under which the organization qualifies as a nonprofit organization as defined by Section 2001.002. If the organization is not required to obtain a federal tax exemption under 26 U.S.C. Section 501, the organization's net proceeds are dedicated to the charitable purposes of the organization only if directed to a cause, deed, or activity that is consistent with the purposes and objectives for which the organization qualifies as an authorized organization under Section 2001.002.

TEX. OCC. CODE §2001.454(b); *see also id.* § 2001.002(7).

A plain reading of the above definition, which is obviously quite broad, does not support the Commission's assertion that an organization's use of bingo proceeds for political advocacy is inherently inconsistent with the charitable purpose requirement. *Cf. R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future and Clean Water*, 336 S.W.3d 619, 628 (Tex. 2011) ("We ordinarily construe a statute so as to give effect to the Legislature's intent as expressed in its plain language."). The definition shows that the requirement is satisfied so long as bingo proceeds are used for a "cause, deed, or activity *that is consistent with*" the purpose for which an organization received its federal tax exemption and qualified as a charitable organization under state law. TEX. OCC. CODE § 2001.454(b) (emphasis added). It is easy to imagine scenarios where a charity could use political advocacy to advance its charitable purpose in a way that satisfies this definition.[2] As the Charities point out, the VFW lobbies in support

---

[2] The court is aware that 26 U.S.C. § 501 restricts the amount of political advocacy certain nonprofit organizations may engage in to remain eligible for a federal tax exemption.

of property tax exemptions for disabled veterans and for veteran entitlement programs offered through the Veterans Administration. We see no reason why these projects violate the charitable purpose requirement as defined above, and the Commission provides no basis to conclude otherwise.

Nor does it appear that the Commission's interpretation of the charitable purpose requirement is entitled to deference. The Texas Supreme Court has explained that it will "generally uphold an agency's interpretation of a statute it is charged . . . with enforcing, 'so long as the construction is reasonable and does not contradict the plain language of the statute.'" *Citizens for a Safe Future and Clean Water*, 336 S.W.3d at 625 (quoting *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 632 (Tex. 2008)). However, that deference is "tempered by several considerations." *Id.*

> It is true that courts give some deference to an agency regulation containing a reasonable interpretation of an ambiguous statute. But there are several qualifiers in that statement. First, it applies to formal opinions adopted after formal proceedings, not isolated comments during a hearing or opinions [in a court brief]. Second, the language at issue must be ambiguous; an agency's opinion cannot change plain language. Third, the agency's construction must be reasonable; alternative *unreasonable* constructions do not make a policy ambiguous.

*Id.* (alteration in original) (quoting *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 747–48 (Tex. 2006)). The Commission has not pointed to any formal opinion in which it has interpreted the charitable purpose requirement as establishing a wholesale prohibition on political advocacy. And while the Bingo Act certainly defines the term "charitable purpose" very broadly, the definition is not ambiguous.

---

*See, e.g.*, 26 U.S.C. §§ 501(c)(3), (h). Nevertheless, we find no support for the Commission's broad assertion that any expenditure by a charity for political advocacy is inherently inconsistent with a tax exemption granted under 26 U.S.C. § 501.

No. 11-50932

The relief sought by the Charities is not independently foreclosed by the charitable purpose requirement, which means that the Charities have standing to bring their claims.

*B. Do the Challenged Provisions Penalize Speech?*

Relying heavily on the Supreme Court's opinion in *Citizens United,* 130 S. Ct. 876, the district court concluded that the challenged provisions violate the First Amendment because they burden political speech and fail to satisfy strict scrutiny. The court also concluded that the provisions violate the unconstitutional conditions doctrine because they require, as a condition of participating in the State's charitable bingo program, that charities not exercise their right to engage in political speech.

The Commission argues that the challenged provisions do not penalize speech at all. It contends that the charitable bingo program is a state subsidy provided for the benefit of qualifying charities and that the challenged provisions simply represent a decision by the State not to subsidize political speech. The Supreme Court has made clear, the Commission argues, that a decision not to subsidize speech does not equate to a penalty on speech. The Commission maintains that the challenged provisions do not violate the unconstitutional conditions doctrine because they apply only to bingo proceeds, and therefore only restrict speech within the confines of the State's charitable bingo program. It notes that charities can participate in the bingo program and still engage in political advocacy; they must simply use funds other than those generated from bingo.

We begin by noting that the Charities have challenged the facial validity of the Bingo Act's speech restrictions. "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exist under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). That the challenged

provisions "might operate unconstitutionally under some conceivable set of circumstances is insufficient to render [them] wholly invalid."[3] *Id.* We briefly review the principles underlying the unconstitutional conditions doctrine as well as the related concept that government can subsidize some activities to the exclusion of others.[4]

"In the most general sense, the unconstitutional-conditions doctrine examines the extent to which government benefits may be conditioned or distributed in ways that burden constitutional rights or principles." *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 286 (5th Cir. 2005). One of the most frequently cited cases discussing the doctrine is *Perry v. Sindermann*, 408 U.S. 593 (1972). That case involved a claim by a professor at a state university alleging that his right to free speech was violated because he was discharged for publicly criticizing the university's administrative policies. *Id.* at 594–96. The Court held that the denial of a government benefit (in that case a teaching position) cannot be predicated on the exercise of a constitutional right. The Court explained:

> For at least a quarter-century, this Court has made clear that even though a person has no "right" to a valuable government benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of

---

[3] Considering that the political advocacy restrictions have been present in the Bingo Act since 1983, we would have anticipated an as applied challenge.

[4] We acknowledge that these principles are sometimes difficult to reconcile. *See* ERWIN CHEMERINSKY, CONSTITUTIONAL LAW: PRINCIPLES AND POLICIES 1013 (4th ed. 2011) (discussing the intersection of the unconstitutional conditions doctrine and the notion that government can subsidize some activities to the exclusion of others).

> those freedoms would in effect be penalized and inhibited. This would allow the government to produce a result which it could not command directly. Such interference with constitutional rights is impermissible.

*Id.* at 597 (internal citation and quotation marks omitted). The Supreme Court has repeatedly reaffirmed the basic premise of this doctrine. *See Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 59 (2006) ("[T]he government may not deny a benefit to a person on a basis that infringes his constitutionally protected . . . freedom of speech even if he has no entitlement to that benefit." (internal quotation marks omitted)); *Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668, 674 (1996); *Dolan v. City of Tigard*, 512 U.S. 374, 385 (1994) ("Under the well-settled doctrine of 'unconstitutional conditions,' the government may not require a person to give up a constitutional right . . . in exchange for a discretionary benefit conferred by the government . . . .").

As the Charities acknowledge, however, the Supreme Court has also held that when government provides a subsidy it is entitled to define the parameters of the subsidized program, even if that means excluding certain types of speech. The Supreme Court explained this principle in *Rust v. Sullivan*, 500 U.S. 173 (1991). That case involved a federal program providing funding for family planning services. *Id.* at 178. The legislation that established the program made clear that abortion was not an approved method of family planning. *Id.* The Department of Health and Human Services promulgated regulations that required, as a condition of participating in the program, that service providers not advocate for abortion (including lobbying) or provide abortion counseling within the scope of the program. *Id.* at 179–81. The service providers challenged those restrictions, arguing that they violated the unconstitutional conditions doctrine because they conditioned receipt of a government benefit (participation

in the program) on the relinquishment of their First Amendment right to advocate for abortion. *Id.* at 196.

The Court held that the unconstitutional conditions doctrine did not apply because "the Government is not denying a benefit to anyone, but is instead simply insisting that public funds be spent for the purposes for which they were authorized. The . . . regulations do not force the . . . grantee to give up abortion-related speech; they merely require that the grantee keep such activities separate and distinct from [program] activities." *Id.* at 196. Responding to the service providers' argument that the speech restrictions constituted impermissible viewpoint discrimination, the Court expounded on the concept that government may subsidize certain activities and not others:

> The Government can, without violating the Constitution, selectively fund a program to encourage certain activities it believes to be in the public interest, without at the same time funding an alternative program which seeks to deal with the problem in another way. In so doing, the Government has not discriminated on the basis of viewpoint; it has merely chosen to fund one activity to the exclusion of another. *A legislature's decision not to subsidize the exercise of a fundamental right does not infringe the right. A refusal to fund protected activity, without more, cannot be equated with the imposition of a penalty on that activity.* There is a basic difference between direct state interference with a protected activity and state encouragement of an alternative activity consonant with legislative policy.

*Id.* at 193 (emphasis added) (internal quotations and citations omitted).

The Court also applied this principle in *Regan v. Taxation with Representation*, 461 U.S. 540 (1983), which involved restrictions similar to those at issue here. In that case, a nonprofit organization challenged a federal statute prohibiting tax exemptions for organizations whose activities include a substantial amount of lobbying. *Id.* at 542 & n.1. The organization argued that the statute violated the unconstitutional conditions doctrine because it

conditioned a government benefit (a tax exemption) on the recipient giving up its right to engage in political speech. *Id.* at 545. The Court disagreed. As in *Rust*, it noted that the plaintiff remained free to exercise its speech rights (lobby) outside the scope of the government tax exemption program. *Id.* at 544–45. The Court equated the tax exemption to a government subsidy and held that the restrictions were simply a choice by the government not to subsidize lobbying. *Id.* at 544, 545–46. The Court made clear that government's decision not to subsidize the exercise of a constitutional right does not equate to a penalty on the right. *See id.* at 546 ("Congress has not infringed any First Amendment rights or regulated any First Amendment activity. Congress has simply chosen not to pay for [plaintiff's] lobbying."); *id.* at 549 ("We have held in several contexts that a legislature's decision not to subsidize the exercise of a fundamental right does not infringe the right . . . ."); *see also United States v. Am. Library Ass'n, Inc.*, 539 U.S. 194, 210–12 (2003) (rejecting an argument that libraries' speech rights were violated by requiring that they restrict internet access in order to receive a federal subsidy because "[a] refusal to fund protected activity, without more, cannot be equated with the imposition of a 'penalty' on that activity" (quoting *Rust*, 500 U.S. at 193)).

We agree that the Bingo Act's political advocacy restrictions fall within government's power to subsidize some activities to the exclusion of others and therefore do not penalize political speech. This case is distinguishable from *Citizens United* in two key respects. *Citizens United* involved a challenge to a federal statute prohibiting corporations from making expenditures for speech relating to federal elections. *Citizens United*, 130 S. Ct. at 887–88. Unlike this case, *Citizens United* did not involve speech restrictions in the context of a government subsidy. Here, the State has created a subsidy program allowing qualifying charities to raise extra money for their charitable causes. As a condition of participating in the program, and receiving the extra money, the

state requires that the money not be used for political advocacy. This requirement does not penalize political speech; it simply represents a decision by the State not to subsidize that activity. *See Rust*, 500 U.S. at 193 ("A legislature's decision not to subsidize the exercise of a fundamental right does not infringe the right." (quoting *Regan*, 461 U.S. at 549)); *see also Am. Library Ass'n*, 539 U.S. at 211–12.

The Charities argue that the State's bingo program cannot be construed as a subsidy because it is based on a licensing scheme instead of cash payments or tax exemptions. They contend that principles set forth in *Rust* and *Regan* apply only to subsidy programs where "the government is providing funds from its treasury to the beneficiary." These arguments, however, put form over substance. In creating the bingo program, the State established a narrow exception to the general ban on gambling allowing charities to conduct bingo games, free of competition, to generate extra income for their charitable causes. That this supplemental income stream is accessible by way of a license, instead of cash payments or a tax exemption, does not change the fact that the bingo program constitutes a government subsidy for participating charities. We see no constitutional principle that would be served by allowing the challenged provisions if the State conducts the bingo games and then distributes the money to the charities, but disallowing the restrictions if the Charities conduct the games themselves.

*Citizens United* is also distinguishable in that it involved a statute that imposed an "outright ban" on specific types of political speech. *Citizens United*, 130 S. Ct. at 897–98. In other words, the challenged statute completely foreclosed any way for corporations to engage in the prohibited political speech. *Id.* The provisions at issue in this case, however, only prohibit the use of *bingo proceeds* for political advocacy and therefore only restrict speech within the scope of the State's charitable bingo program. As explained in *Rust*, the

14

unconstitutional conditions doctrine is implicated when government requires, as a condition of participating in a government program, that the participant not exercise a constitutional right *outside* the scope of the program. *See Rust*, 500 U.S. at 197 ("[O]ur 'unconstitutional conditions' cases involve situations in which the Government has placed a condition on the *recipient* of the subsidy rather than on a particular program or service, thus effectively prohibiting the recipient from engaging in the protected conduct outside the scope of the federally funded program."). The challenged provisions in this case do nothing to restrict speech outside the scope of the State's bingo program. Charities are free to participate in the bingo program and engage in political advocacy; they simply must not use bingo proceeds to do so.

## CONCLUSION

The Bingo Act's restrictions on the use of bingo proceeds for political advocacy are permissible conditions on a government subsidy and do not operate to penalize speech. Accordingly, we REVERSE the judgment of the district court and all relief granted therein.