# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| DEBORAH THOMSON, an individual, | ) | No. 72321-9-I |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| JANE DOE, | ) | |
| Respondent. | ) | FILED: July 6, 2015 |
| | ) | |

APPELWICK, J. — What showing must be made by a defamation plaintiff seeking disclosure of an anonymous speaker's identity? This is an open question in Washington. Thomson brought a defamation suit against Doe, an anonymous poster who wrote a negative review of Thomson on Avvo.com. Thomson then subpoenaed Avvo seeking Doe's identity. When Avvo refused to provide the information, Thomson moved to compel Avvo's compliance with the subpoena. The trial court denied Thomson's motion, finding that Thomson had not made a prima facie claim of defamation. We affirm.

## FACTS

Deborah Thomson is a Florida attorney. Avvo Inc. operates an online lawyer review and rating system. On May 21, 2014, Thomson filed a pro se lawsuit in Florida

against Jane Doe, an anonymous individual who posted a review on Thomson's Avvo profile. The review, posted by "Divorce client," stated:

> I am still in court five years after Ms. Thomson represented me during my divorce proceedings. Her lack of basic business skills and detachment from her fiduciary responsibilities has cost me everything. She failed to show up for a nine hour mediation because she had vacation days. She failed to subpoena documents that are critical to the division of assets in any divorce proceeding. In fact, she did not subpoena any documents at all. My interests were simply not protected in any meaningful way.

Thomson's complaint alleged that Doe was not a client and that the post was designed to impugn Thomson's personal and professional reputation. Thomson alleged four causes of action: defamation, defamation per se, defamation by implication, and intentional infliction of emotional distress (IIED).[1]

On June 25, 2014, Thomson filed a subpoena in King County Superior Court requesting from Avvo the anonymous poster's identification.[2] On July 3, Thomson received an e-mail from Joshua King, Avvo's vice president of business development and general counsel. King told Thomson,

> I've received your subpoena seeking records on an anonymous review. Our policy on handling such subpoenas is to let the reviewer know, so that they can move to quash if they want. They may also provide me with more information about the representation, in which case we may ask you to withdraw the subpoena.

Thomson replied, "Thank you for letting me know. . . . I am pretty certain I am aware who wrote it, so I am eager to obtain the records."

---

[1] Thomson's IIED claim cannot survive if her defamation claim is not constitutionally sufficient. See Hustler Magazine, Inc. v. Falwell, 485 U.S. 46, 56, 108 S. Ct. 876, 99 L. Ed. 2d 41 (1988). Therefore, we address only Thomson's defamation claims.

[2] Avvo's principal place of business is in Washington.

On July 8, King e-mailed Thomson,

> I have received a response. While I can't give you the specifics, it included information sufficient for me to believe the reviewer was a client of yours.
>
> Given this information, I ask that you withdraw the subpoena.

Thomson responded, "Please be advised that I will not be withdrawing my subpoena. Please provide the documents requested therein."

On July 16, Thomson moved to compel Avvo to comply with the subpoena. She asserted that Doe's speech was libel and defamation. Specifically, she alleged that each of the sentences in the Doe post was either a false statement of fact or a combination of fact and opinion that was provably false. She did not submit a declaration, affidavit, or any other evidence in support of her motion.

Avvo opposed the motion, arguing that Thomson failed to show that the post was defamatory and failed to provide evidence of damages.

On July 28, the trial court denied Thomson's motion to compel. It stated that Thomson "failed to make a prima facie showing re[garding her] defamation claim."

Thomson appeals.[3] Avvo and Doe each filed a response.

---

[3] This case was filed as a direct appeal. Because the denial of Thomson's motion was not a final order, we believe it is more appropriately a matter for discretionary review. See RAP 2.2(a). However, neither responding party challenged the order's appealability, and the parties agree that this case poses an issue involving a significant public interest. We will therefore address the issue.

DISCUSSION

The First Amendment protects the right to speak anonymously. McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 342, 115 S. Ct. 1511, 131 L. Ed. 2d 426 (1995). This right applies equally to online speech. In re Anonymous Online Speakers, 661 F.3d 1168, 1173 (9th Cir. 2011). However, defamatory speech does not enjoy the protections of the First Amendment. Chaplinksy v. New Hampshire, 315 U.S. 568, 571-72, 62 S. Ct. 766, 86 L. Ed. 1031 (1942). Accordingly, when faced with a defamation claim, courts aim to strike a balance between the right to protect one's reputation and the constitutional right to free speech. See, e.g., Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc., 472 U.S. 749, 759-60, 105 S. Ct. 2939, 86 L. Ed. 2d 593 (1985); Gertz v. Robert Welch, Inc., 418 U.S. 323, 346-48, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974); New York Times Co. v. Sullivan, 376 U.S 254, 279-80, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964).

To that end, the United States Supreme Court has considered the type of speech at issue when determining the appropriate standards to apply in defamation cases. For example, when a defamed plaintiff is a public figure, the standard of fault is more stringent; such a claim requires a showing of actual malice. See New York Times, 376 U.S at 279-80; Curtis Publ'g Co. v. Butts, 388 U.S. 130, 155, 162-63, 87 S. Ct. 1975, 18 L. Ed. 2d 1094 (1967). This heightened standard reflects the constitutionally protected "'interchange of ideas for the bringing about of political and social changes desired by the people.'" New York Times, 376 U.S. at 269 (quoting Roth v. United States, 354 U.S. 476, 484, 77 S. Ct. 1304, 1 L. Ed. 2d 1498 (1957)). By contrast, when the challenged speech involves a purely private concern, "[t]here is no threat to the free and robust debate of

4

public issues'" and thus the First Amendment provides less stringent protection. Dun & Bradstreet, 472 U.S. at 759-60 (alteration in original) (quoting Harley-Davidson Motorsports, Inc. v. Markley, 279 Or. 361, 366, 568 P.2d 1359 (1977)).

Here, we are asked to determine whether the trial court struck the proper balance in reviewing Thomson's motion to disclose Doe's identity. To answer this question, we must address two issues: first, whether the trial court applied the correct standard in reviewing a motion to reveal an anonymous speaker's identity, and second, whether Thomson met that standard.

Whether the trial court applied the correct legal standard is a question of law that we review de novo. Hundtofte v. Encarnación, 181 Wn.2d 1, 13, 330 P.3d 168 (2014) (Madsen, J. concurring). If the correct legal standard was applied, we generally review a trial court's denial of a motion to compel for an abuse of discretion. Lake Chelan Shores Homeowners Ass'n v. St. Paul Fire & Marine Ins. Co., 176 Wn. App. 168, 183, 313 P.3d 408 (2013). This is because the trial court is "'better positioned than another'" to decide discovery issues. Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 339, 858 P.2d 1054 (1993) (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 403, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990)); see also Amy v. Kmart of Wash. LLC, 153 Wn. App. 846, 855-56, 223 P.3d 1247 (2009).

However, when the trial court's ruling involves libelous speech, the United States Supreme Court has indicated that independent appellate review is proper. Bose Corp. v. Consumers Union of U.S., Inc., 466 U.S. 485, 499, 104 S. Ct. 1949, 80 L. Ed. 2d 502

(1984). This is because the constitutional values at issue warrant review by judges—including appellate judges—rather than the trier of fact:

> In such cases, the Court has regularly conducted an independent review of the record both to be sure that the speech in question actually falls within the unprotected category and to confine the perimeters of any unprotected category within acceptably narrow limits in an effort to ensure that protected expression will not be inhibited. Providing triers of fact with a general description of the type of communication whose content is unworthy of protection has not, in and of itself, served sufficiently to narrow the category, nor served to eliminate the danger that decisions by triers of fact may inhibit the expression of protected ideas.

Id. at 502, 504-05.

Bose thus suggests that when a discovery motion—typically a matter of discretion—implicates the First Amendment, the trial court is no longer better positioned to decide the issue in question. See Fisons, 122 Wn.2d at 339. We acknowledge a distinction between Bose and the present case. There, the Court reviewed the finding of actual malice, one of the elements of the plaintiff's defamation claim. Bose, 466 U.S. at 489-90. Here, we review the denial of the plaintiff's motion to unmask the defendant, a threshold question. Thus, unlike in Bose, the decision before us does not involve the ultimate determination of whether the speech was libelous and therefore unprotected. Nonetheless, a motion to reveal a speaker's identity has First Amendment consequences. See McIntyre, 514 U.S. at 342 (acknowledging the constitutional right to anonymous speech). Accordingly, we hold that de novo review is the proper standard of review when considering the trial court's decision on a motion to reveal an anonymous speaker's identity.

We now turn to the requisite showing a defamation plaintiff must make on a motion to unmask an anonymous defendant. This is an open question in Washington. However, many other courts, both federal and state, have considered this issue. See discussion infra. The two leading cases are Dendrite Int'l, Inc. v. Doe No. 3, 342 N.J. Super. 134, 140, 775 A.2d 756 (2001) and Doe No. 1 v. Cahill, 884 A.2d 451, 456 (Del. 2005).

In Dendrite, an anonymous speaker posted messages on an online bulletin board criticizing Dendrite's stock performance. 342 N.J. Super. at 145. Dendrite sued the anonymous speaker and sought disclosure of the speaker's identity. Id. at 146. The New Jersey intermediate appellate court set out a four-step process for determining whether to compel disclosure of the speaker's identity:

> [T]he trial court should first require the plaintiff to undertake efforts to notify the anonymous posters that they are the subject of a subpoena or application for an order of disclosure, and withhold action to afford the fictitiously-named defendants a reasonable opportunity to file and serve opposition to the application. These notification efforts should include posting a message of notification of the identity discovery request to the anonymous user on the ISP's pertinent message board.
>
> The court shall also require the plaintiff to identify and set forth the exact statements purportedly made by each anonymous poster that plaintiff alleges constitutes actionable speech.
>
> The complaint and all information provided to the court should be carefully reviewed to determine whether plaintiff has set forth a prima facie cause of action against the fictitiously-named anonymous defendants. In addition to establishing that its action can withstand a motion to dismiss for failure to state a claim upon which relief can be granted . . . , the plaintiff must produce sufficient evidence supporting each element of its cause of action, on a prima facie basis, prior to a court ordering the disclosure of the identity of the unnamed defendant.
>
> Finally, assuming the court concludes that the plaintiff has presented a prima facie cause of action, the court must balance the defendant's First Amendment right of anonymous free speech against the strength of the

prima facie case presented and the necessity for the disclosure of the anonymous defendant's identity to allow the plaintiff to properly proceed.

Id. at 141-42. The Dendrite court stated that the test "must be undertaken and analyzed on a case-by-case basis. The guiding principle is a result based on a meaningful analysis and a proper balancing of the equities and rights at issue." Id. at 142.

In Cahill, the Delaware Supreme Court considered the proper standard to apply when faced with a public figure plaintiff's request to unmask an anonymous defendant. 884 A.2d at 457. The Cahill court adopted a "modified Dendrite standard consisting only of Dendrite requirements one and three: the plaintiff must make reasonable efforts to notify the defendant and must satisfy the summary judgment standard."[4] Id. at 461. In concluding that summary judgment was the appropriate evidentiary standard, the Cahill court expressed concern "that setting the standard too low will chill potential posters from exercising their First Amendment right to speak anonymously." Id. at 457. The court recognized that there was an "entire spectrum" of evidentiary standards that could be applied, with varying levels of severity.[5] Id. It rejected the least stringent standard, the good faith test:

---

[4] In rejecting the other two requirements, the Cahill court noted that the second step—requiring the plaintiff to set forth the exact defamatory statements—was subsumed in the summary judgment inquiry. 884 A.2d at 461. It further reasoned that the fourth step—the balancing prong—was unnecessary, because the "summary judgment test is itself the balance." Id. The Cahill court evidently considered its summary judgment standard as equivalent to Dendrite's required prima facie showing. We discuss this further below.

[5] Although the lines between standards are sometimes blurred, cases and commentators generally discuss four levels of evidentiary showings, listed here from least to most stringent: (1) requiring a good faith basis that the plaintiff was the victim of actionable conduct, (2) requiring a party to show that its claim can survive a motion to dismiss, (3) requiring a prima facie showing that actionable conduct occurred, and (4) requiring a plaintiff to survive a hypothetical motion for summary judgment. See, e.g., Cahill, 884 A.2d at 457 (grouping together prima facie and summary judgment standards);

> Plaintiffs can often initially plead sufficient facts to meet the good faith test applied by the Superior Court, even if the defamation claim is not very strong, or worse, if they do not intend to pursue the defamation action to a final decision. After obtaining the identity of an anonymous critic through the compulsory discovery process, a defamation plaintiff who either loses on the merits or fails to pursue a lawsuit is still free to engage in extra-judicial self-help remedies; more bluntly, the plaintiff can simply seek revenge or retribution.

Id. It also rejected the next level of evidentiary showing, the motion to dismiss standard:

> [E]ven silly or trivial libel claims can easily survive a motion to dismiss where the plaintiff pleads facts that put the defendant on notice of his claim, however vague or lacking in detail these allegations may be. Clearly then, if the stricter motion to dismiss standard is incapable of screening silly or trivial defamation suits, then the even less stringent good faith standard is less capable of doing so.

Id. at 459. By contrast, the court noted, the summary judgment standard would "more appropriately protect against the chilling effect on anonymous First Amendment internet speech that can arise when plaintiffs bring trivial defamation lawsuits primarily to harass or to unmask their critics."[6] Id.

As a threshold matter, we agree with Dendrite and Cahill that notice is a crucial element of the standard. See 342 N.J. Super.at 141; 884 A.2d at 460-61. In the interest of due process—or, at the very least, in the interests of fairness and judicial economy— a plaintiff should attempt to notify a Doe defendant that his or her identity might be unmasked. Here, although Thomson did not attempt to provide notice to Doe, Doe acknowledges that Avvo cured this problem by notifying her.

---

Mallory Allen, Ninth Circuit Unmasks Anonymous Internet Users and Lowers the Bar For Disclosure of Online Speakers, 7 WASH. J. L. TECH. & ARTS 75, 82-85 (2011) (grouping together motion to dismiss and prima facie standards).

[6] It is worth noting that, under the Cahill standard, the plaintiff is required to introduce only such evidence that is within his or her control. 884 A.2d at 463.

The choice of whether to apply the standard of either <u>Dendrite</u> or <u>Cahill</u> is less clear. Most federal and state courts to consider this question have adopted some form of the <u>Dendrite</u> and <u>Cahill</u> tests.[7] In addition, two state courts have determined that adopting <u>Dendrite</u> or <u>Cahill</u> would be unnecessary, because their state procedural rules provided equivalent protection.[8] Only one court has significantly strayed from <u>Dendrite</u> and <u>Cahill</u>. The Virginia Court of Appeals declined to adopt either test, instead applying a state statute that required a lower standard of proof. <u>Yelp, Inc. v. Hadeed Carpet</u>

---

[7] See <u>SaleHoo Grp., Ltd. v. ABC Co.</u>, 722 F. Supp. 2d 1210, 1215 (W.D. Wash. 2010) (adopting a <u>Dendrite</u>-style test); <u>Doe I v. Individuals</u>, 561 F. Supp. 2d 249, 255-56 (D. Conn. 2008) (adopting the <u>Dendrite</u> prima facie showing, because <u>Cahill's</u> test is "potentially confusing and also difficult for a plaintiff to satisfy"); <u>Highfields Capital Mgmt., LP v. Doe</u>, 385 F. Supp. 2d 969, 974 n.6, 975 (N.D. Cal. 2005) (relying on <u>Dendrite</u> and <u>Cahill</u> in holding that it "is not enough for a plaintiff simply to plead and pray"); <u>Mobilisa, Inc. v. Doe</u>, 217 Ariz. 103, 111, 170 P.3d 712 (2007) (adopting <u>Cahill's</u> summary judgment standard and <u>Dendrite's</u> balancing test); <u>Krinsky v. Doe 6</u>, 159 Cal. App. 4th 1154, 1172, 72 Cal. Rptr. 3d 231 (2008) ("agree[ing] with those courts that have compelled the plaintiff to make a prima facie showing of the elements of libel"); <u>Solers, Inc. v. Doe</u>, 977 A.2d 941, 954 (D.C. 2009) (adopting a test that "closely resembles the 'summary judgment' standard articulated in <u>Cahill</u>"); <u>In re Indiana Newspapers</u>, 963 N.E.2d 534, 552 (Ind. Ct. App. 2012) (finding that "the test that draws the most appropriate balance between protecting anonymous speech and preventing defamatory speech is the <u>Dendrite</u> test"); <u>Doe No. 1 v. Coleman</u>, 436 S.W.3d 207, 211 (Ky. Ct. App. 2014) (adopting the <u>Dendrite</u> test "as modified by" <u>Cahill</u>); <u>Indep. Newspapers, Inc. v. Brodie</u>, 407 Md. 415, 454-55, 966 A.2d 432 (2009) (adopting the <u>Dendrite</u> test); <u>Mortg. Specialists, Inc. v. Implode-Explode Heavy Indus., Inc.</u>, 160 N.H. 227, 239, 999 A.2d 184 (2010) ("join[ing] those courts which endorse the <u>Dendrite</u> test"); <u>Pilchesky v. Gatelli</u>, 2011 Pa. Super 3, 12 A.3d 430, 442-46 (2011) (adopting a "modified version of the <u>Dendrite/Cahill</u> test"); <u>In re Does 1-10</u>, 242 S.W.3d 805, 821 (Tex. Ct. App. 2007) (finding itself "in alignment with the formulations set out in <u>Cahill</u>").

[8] See <u>Maxon v. Ottawa Publ'g Co.</u>, 402 Ill. App. 3d 704, 711, 929 N.E.2d 666 (2010) (Illinois Supreme Court Rule 224 requires notice, specification of defamatory statements, determination that valid claim was stated, and verified complaint); <u>Thomas M. Cooley Law Sch. v. John Doe 1</u>, 300 Mich. App. 245, 266, 833 N.W.2d 331 (2013) (court rules require plaintiff to survive motion for summary disposition and allow Doe to obtain protective order); <u>see also</u> <u>Ghanam v. Does</u>, 300 Mich. App. 522, 539-40, 845 N.W.2d 128 (2014) (endorsing <u>Dendrite/Cahill</u> as a preferable standard, but following <u>Cooley</u> as precedent).

Cleaning, Inc., 62 Va. App. 678, 695-97, 752 S.E.2d 554, 562 (2014), rev'd on other grounds, 770 S.E.2d 440 (2015). Under the Virginia statute, a defamation plaintiff seeking an anonymous speaker's identity must establish a good faith basis to contend that the speaker committed defamation. Id. at 699. In rejecting Dendrite and Cahill, the Hadeed court stated that the legislature had "considered persuasive authority from other states and made the policy decision to include or exclude factors that other states use in their unmasking standards." Id. at 703.

Thomson argues that we should follow Virginia's lead and apply the good faith test, while Doe and Avvo advocate the heightened standard under Dendrite and Cahill. In this way, the parties frame the issue before us as an either/or decision. But, in doing so, the parties bypass an important threshold question: what is the nature of the speech at issue?

The Ninth Circuit has suggested that this question is crucial when reviewing a motion to disclose an anonymous speaker's identity. See Anonymous, 661 F.3d at 1177. In Anonymous, the plaintiff sought to unmask anonymous online posters who disparaged the plaintiff and its business practices. Id. at 1171. Applying Cahill, the district court granted the plaintiff's motion. Id. at 1172, 1176. The posters filed a writ of mandamus challenging the decision. Id. at 1172. The Ninth Circuit denied the writ, finding that the posters had not demonstrated a need for the extraordinary remedy of mandamus. Id. at 1177-78. In doing so, the Anonymous court also discussed the link between the type of speech at issue and the appropriate evidentiary standard:

> Because Cahill involved political speech, that court's imposition of a heightened standard is understandable. In the context of the speech at issue here balanced against a discretionary discovery order under [Federal Rule of Civil Procedure] 26, however, Cahill's bar extends too far. . . . [W]e suggest that the nature of the speech should be a driving force in choosing

a standard by which to balance the rights of anonymous speakers in discovery disputes. For example, in discovery disputes involving the identity of anonymous speakers, the notion that commercial speech should be afforded less protection than political, religious, or literary speech is hardly a novel principle. The specific circumstances surrounding the speech serve to give context to the balancing exercise.

Id. at 1176-77 (emphasis added) (citations omitted).

We agree with Anonymous: the evidentiary standard should match the First Amendment interest at play. This aligns with the United States Supreme Court's treatment of the standard of fault in defamation cases. See, e.g., New York Times, 376 U.S at 279-80 (requiring plaintiffs to meet a higher bar in cases of protected speech); Dun & Bradstreet, 472 U.S. at 758-60 (recognizing that commercial speech warrants lesser protection). We therefore hold that, when addressing a defamation plaintiff's motion to unmask an anonymous defendant, the court must consider the nature of the speech at issue when determining the evidentiary standard to apply.

Here, the parties treat the type of speech as a peripheral question, only cursorily disputing whether Doe's statements constituted commercial speech. If Doe's speech was commercial, it would warrant a lower evidentiary bar. See Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York, 447 U.S. 557, 562-63, 100 S. Ct. 2343, 65 L. Ed. 2d 341 (1980) ("The Constitution therefore accords lesser protection to commercial speech than other constitutionally guaranteed expression."). Commercial speech is "expression related solely to the economic interests of the speaker and its audience" or "speech proposing a commercial transaction." Id. at 561-62. Doe's speech does not meet this standard: although her economic interests might have been affected by the behavior her review describes, her act of speech impacts more than her economic

12

interests. While Doe's speech is not commercial, warranting the lowest protection, it is also not political, warranting the highest. Thus, Doe's speech is entitled to an intermediate level of protection.

As such, we reject Thomson's assertion that a good faith showing—the least stringent standard—would be appropriate here. We likewise reject the next level of evidentiary showing, the motion to dismiss standard. As Dendrite and Cahill persuasively argue, this standard would be inadequate to protect this level of speech. See 342 N.J. Super. at 156; 884 A.2d at 458-60. Specifically, Cahill points out that in a notice pleading state like Delaware, a complaint "need only give 'general notice of the claim asserted.'" 884 A.2d at 458 (quoting Ramunno v. Cawley, 705 A.2d 1029, 1034 (Del. Sup. Ct. 1998)). Therefore, "even silly or trivial libel claims can easily survive a motion to dismiss where the plaintiff pleads facts that put the defendant on notice of his claim, however vague or lacking in detail these allegations may be." Cahill, 884 A.2d at 459. Washington is also a notice pleading state, requiring only a simple concise statement of the claim and relief sought. CR 8(a); Pac. Nw. Shooting Park Ass'n v. City of Sequim, 158 Wn.2d 342, 352, 144 P.3d 276 (2006). Thus, under the motion to dismiss standard, a defamation plaintiff would need only to allege the elements of the claim, without supporting evidence. This is insufficient to protect the speaker's First Amendment right to anonymous speech. As Doe points out, disclosing a speaker's identity is a harm that cannot be reversed. Imposing a higher standard ensures that a speaker's identity is not disclosed in a "silly or trivial" case. Cahill, 884 A.2d at 459. And, it preserves judicial resources by ensuring that a newly unmasked defendant could not immediately have the case dismissed.

This leaves the two remaining standards considered by other courts: prima facie and summary judgment. The Cahill court's treatment of its summary judgment standard as equivalent to Dendrite's prima facie standard has caused some confusion in subsequent cases in other jurisdictions. See 884 A.2d at 460; see also Solers, Inc. v. Doe, 977 A.2d 941, 954 (D.C. 2009) ("Procedural labels such as *prima facie* or 'summary judgment' may prove misleading, but the test we now adopt closely resembles the 'summary judgment' standard articulated in Cahill."); Pilchesky v. Gatelli, 2011 P.A. Super 3, 12 A.3d 430, 444 (2011) ("[I]n Pennsylvania, the prima facie test and the summary judgment test are identical."); Indep. Newspapers, Inc. v. Brodie, 407 Md. 415, 455-56, 966 A.2d 432 (2009) (rejecting the summary judgment standard as too stringent, instead adopting the prima facie standard). Despite this confusion, the "important feature of Dendrite and Cahill is to emphasize that the plaintiff must do more than simply plead his case." Solers, 977 A.2d at 954. Considering the speech at issue here, we agree that supporting evidence should be required before the speaker is unmasked.[9]

An additional factor that informs this question is the point in time in the litigation at which the question arises. Here, Doe had not appeared, answered Thomson's complaint, or defended against the subpoena. In fact, Doe did not have notice of the lawsuit until Avvo notified her. In our judgment, under these circumstances—where a plaintiff

---

[9] In Washington, the two standards are not identical. A prima facie showing means "'evidence of sufficient circumstances which would support a logical and reasonable inference of the facts sought to be proved.'" State v. Baxter, 134 Wn. App. 587, 596, 141 P.3d 92 (2006) (internal quotation marks omitted) (quoting State v. Aten, 130 Wn.2d 640, 656, 927 P.2d 210 (1996)). Summary judgment is more stringent, requiring the moving party to show that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. CR 56(c); Wilson Court Ltd. P'ship v. Toni Maroni's, Inc., 134 Wn.2d 692, 698, 952 P.2d 590 (1998).

14

subpoenas a third party without the defendant's involvement—the summary judgment standard is too severe and a prima facie standard should be applied.[10]

Doe also urges this court to adopt the balancing prong of the Dendrite test, arguing that it allows courts to weigh equitable considerations posed by individual cases. The inclusion of a balancing test has thus far been a matter of debate nationally.[11] Cahill and its progeny have rejected the balancing test as unnecessary. See Cahill, 884 A.2d at 461; Krinsky v. Doe 6, 72 Cal. Rptr. 3d 231, 245-46 (2008); Solers, 977 A.2d at 956. As the Krinsky court reasoned, "When there is a factual and legal basis for believing libel may have occurred, the writer's message will not be protected by the First Amendment. Accordingly, a further balancing of interests should not be necessary to overcome the defendant's constitutional right to speak anonymously." 72 Cal. Rptr. 3d at 245-46 (citations omitted). In support of the balancing test, the Pilchesky court reasoned that defamation law "nurture[s] the proper balance between an individual's right to speak freely and an injured plaintiff's right to redress . . . . By imposing upon the trial court the task of balancing these interests, First Amendment considerations are brought into proper focus." 12 A.3d at 445-46. Likewise, in Mobilisa, Inc. v. Doe, 217 Ariz. 103, 1111, 170 P.3d 712

---

[10] By contrast, if an unmasked defendant could immediately prevail on summary judgment, disclosing his or her identity would have no legal purpose. Where a defendant has appeared and answered, he or she is in a position to file a summary judgment motion. To avoid unnecessary disclosure, the trial court could defer the discovery motion pending the summary judgment or apply the higher summary judgment standard to the discovery motion in lieu of the prima facie standard.

[11] Compare Cahill, 884 A.2d at 461 (rejecting Dendrite balancing test); Krinsky, 72 Cal. Rptr. 3d at 245-46 (same); Solers, 977 A.2d at 956 (same); Coleman, 436 S.W.3d at 211 (same); Does 1-10, 242 S.W.3d at 821-22 (same) with Mobilisa, 170 P.3d at 720-21 (adopting Dendrite balancing test); Indiana Newspapers, 963 N.E.2d at 552 (same); Brodie, 966 A.2d at 456 (same); Mortgage Specialists, 999 A.2d at 193 (same); Pilchesky, 12 A.3d 445-46 (same).

(2007), the court asserted that the test is "necessary to achieve appropriate rulings in the vast array of factually distinct cases likely to involve anonymous speech." The Mobilisa court continued that

> surviving a summary judgment on elements not dependent on the anonymous party's identity does not necessarily account for factors weighing against disclosure. For example, the anonymous speaker may be a non-party witness along with a number of known witnesses with the same information. The requesting party's ability to survive summary judgment would not account for the fact that in such a case it may have only a slight need for the anonymous party's identity. Additionally, without a balancing step, the superior court would not be able to consider factors such as the type of speech involved, the speaker's expectation of privacy, the potential consequence of a discovery order to the speaker and others similarly situated, the need for the identity of the speaker to advance the requesting party's position, and the availability of alternative discovery methods. Requiring the court to consider and weigh these factors, and a myriad of other potential factors, would provide the court with the flexibility needed to ensure a proper balance is reached between the parties' competing interests on a case-by-case basis.

Id. at 720-21 (citation omitted).

As Mobilisa recognizes, certain cases present facts that could necessitate application of the balancing prong. Here, neither party asserts—nor do we perceive—any such facts. This is a straightforward libel claim against a speaker brought by the subject of the speech. Thus, while Dendrite balancing might be appropriate in some cases, it is not justified on the record before us.

The final issue we address is Avvo's attempt to serve as the arbiter of Doe's identifying information. Obtaining information from the anonymous poster allowed Avvo to make an informed response to Thomson. Once in that position, Avvo should have afforded the trial court the opportunity for in camera review, so that it too could ground its decision in fact rather than speculation.

16

The trial court applied the proper standard in reviewing Thomson's motion. Under that standard, Thomson's motion must fail. As Thomson freely admits, she presented no evidence to support her motion.[12] Therefore, the trial court properly denied Thomson's motion for failure to make a prima facie showing of defamation.[13]

We affirm.

WE CONCUR:

---

[12] In fairness to Thomson, when she filed her motion, the requisite showing was unclear. And, Avvo brought no motion challenging the adequacy of Thomson's pleadings. But, because Thomson did not produce any supporting evidence, her claim fails whether we review it as a direct appeal or discretionary review, de novo or for abuse of discretion.

[13] Thomson brought a Florida claim against Doe. Therefore, Florida law would provide the required elements of defamation unless it is established that another jurisdiction's law is applicable.